## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    v.

WILLIAM VOGEL,

    Defendant.

Criminal Action No. 21-56 (CKK)

### MEMORANDUM OPINION AND ORDER
(June 17, 2024)

Pending before this Court are Defendant William Vogel's [86] Motion for Early Termination of Probation ("Def.'s Mot."); the Government's [87] Memorandum in Opposition to Defendant's Motion for Early Termination of Probation ("Govt. Opp'n"); and Defendant's [88] Reply in Support of Motion for Early Termination of Probation ("Def.'s Reply").  Upon review of the pleadings, the relevant legal authorities, and the entire record, this Court DENIES Defendant William Vogel's Motion for Early Termination of Probation.

### I. BACKGROUND

On February 1, 2023, Mr. Vogel pleaded guilty to one count of Parading, Demonstrating, or Picketing in the Capitol Building, in violation of 20 U.S.C. §5104(e)(2)(G).  *See* Plea Agreement, ECF No. 51.  In connection with the January 6, 2021 riot, Mr. Vogel entered the United States Capitol Building on that date, as rioters were chanting and climbing into the Capitol through broken windows, and he remained inside the Capitol for approximately 20 minutes.  Statement of Offense, ECF No. 50, at ¶¶10-11.  After being escorted out of the Capitol Building, he remained on the grounds and waved a flag with the words "Trump 2020."  *Id.* at ¶12.  Defendant posted photos of himself participating in the riot on Facebook.  *Id.*

1

On June 16, 2023, the Court sentenced Mr. Vogel to 30 days of incarceration, followed by 36 months of probation, with $500.00 in restitution.  *See* Judgment; ECF No. 67, at 2-3, 6.  Mr. Vogel appealed from that Judgment, *see* Notice of Appeal, ECF No. 66, and on June 22, 2023, Mr. Vogel filed a motion for release from custody pending appeal, arguing that a legal question existed as to the imposition of a sentence on a petty offense that included both imprisonment and probation.  *See* Def.'s Mot. for Release Pending Appeal, ECF No. 63.  Defendant's request was unopposed by the Government, which noted that the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") was considering this issue in *United States v. Little*, and furthermore, that the legality of split sentences for a defendant convicted of a single petty offense was a "close question."  Govt. Non-Opposition to Def.'s Mot., ECF No. 64, at 1.  Accordingly on July 7, 2023, this Court granted in part and denied in part Defendant's Motion, ordering Defendant to serve his sentence of incarceration but staying his probationary term while the appeal was pending.  Order, ECF No. 689, at 2.  The Court stated that "if the Court of Appeals determines that split sentences are not legal, Defendant's Judgment will be revised to eliminate the period of probation."  *Id.*  On August 18, 2023, the Court of Appeals for the D.C. Circuit issued its opinion in *Little*, 78 F.4th 354, 454 (D.C. Cir. 2023), interpreting Section 3561(a)(3) as barring both prison and probation for the same petty offense and remanding the case for resentencing.  Before the D.C. Circuit could rule on Mr. Vogel's appeal, he voluntarily dismissed it on March 11, 2024, *see* ECF No. 83, and he filed the instant motion for early termination of his probationary sentence.  Mr. Vogel has served his thirty days of incarceration, but his period of probation has not commenced.

## II. LEGAL STANDARD

Pursuant to 18 U.S.C. § 3564(c), a court has discretion to terminate a term of probation imposed in a misdemeanor case, at any time, "if it is satisfied that such action is warranted by the

conduct of the defendant and the interest of justice." 18 U.S.C. § 3564(c).  In considering early termination, courts must consider the factors set out in 18 U.S.C. §3553(a), to the extent they are applicable.  *Id.*; *see also United States v. Hartley*, 34 F.4th 919, 929-932 (10th Cir. 2022) (finding that a district court must make individualized determinations based on the applicable statutory criteria before responding to a request to modify a sentence).  Accordingly, pursuant to Section 3564(c), courts are permitted to terminate a term of probation early only if such early termination is warranted by "the interest of justice" and by the "conduct of the defendant," and it is consistent with the applicable §3553(a) factors.  *United States v. Ferrell*, 234 F. Supp. 3d 61, 63 (D.D.C. 2017).

The §3553(a) factors to be considered by the Court are: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) deterrence of criminal conduct; (3) protection of the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or correctional treatment; (5) the applicable sentencing guideline range for the offense and pertinent policy statements by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.  *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), and (a)(4)-(7).

### III. ANALYSIS

As a preliminary matter, the Government argues that "early termination is not the appropriate remedy for [Mr. Vogel's] illegal sentence," but instead, as reflected in *Little*, "the proper remedy is to vacate the illegal sentence so that the defendant may be resentenced to a lawful term."  Govt. Opp'n, ECF No. 87, at 1; *see Little*, 78 F.4th at 461 (vacating a split sentence and remanding the case for resentencing); *see also United States v. Caplinger*, No. 22-3057 (D.C. Cir.

Feb. 21, 2025) [Remand Order] (ECF No. 99-1 in 21-cr-342), where the D.C. Circuit granted the government's request for a remand for resentencing over defendant's request that the Circuit vacate the probationary term of his split sentence in a case where Defendant had served his term of incarceration.[1]   Defendant distinguishes both *Little* and *Caplinger*, as cases where "the parties were debating whether, in cases involving unlawful split sentences, eliminating probation is *required* under the Double Jeopardy Clause where the defendant had already served his period of incarceration."  Def.'s Reply, ECF No. 88, at 5 (citations omitted).  Defendant is not arguing double jeopardy in the instant motion, but rather whether the district court "is *allowed* to terminate probation under §3564(c)."  *Id.* at 5, 7-8.[2]

In this case, Defendant asserts that early termination of probation is warranted because his split sentence is "unlawful" under the D.C. Circuit's opinion in *Little*.  Def.'s Mot., ECF No. 86, at 3-4; *see Little*, 78 F.4th at 454.  Defendant asserts further that the "interest of justice plainly favors ridding Mr. Vogel of the illegal portion of his sentence,"  Def's Reply, ECF No. 88, at 2, as Defendant has "fully served the imprisonment portion of his sentence[.]"  Def.'s Mot., ECF No. 86, at 5.  Furthermore, "consideration of the applicable §3553(a) factors also counsels in favor of

---

[1]  The Government cites two cases for the proposition that a resentencing is appropriate to correct an invalid sentence involving consecutive punishments, even if the resentencing increases the punishment.  Neither of these cases addresses whether a sentence can be modified through a motion for early termination of supervision.

[2] The Government argues that resentencing would not violate double jeopardy, but such argument is premature as Defendant has not raised that issue in the context of his Motion.  The Government argues also that resentencing is particularly appropriate where the sentence imposed consists of two components – incarceration and probation – "to best address the statutory sentencing factors of 18 U.S.C. §3553(a)," Govt. Opp'n, ECF No. 87, at 10, and for the Court to "determine at resentencing how the initial sentence should be adjusted to bring it into conformity with what is legally authorized and to ensure it achieves the intended punitive effect."  *Id.* at 12.  Defendant asserts however that "these considerations are already accounted for under §3564(c), which instructs courts to consider the §3553(a) factors, as applicable, when considering a motion to terminate probation.  Def.'s Reply, ECF No. 88, at 6.

termination Mr. Vogel's term of probation." Def.'s Mot., ECF No. 86, at 8. Defendant relies on two cases from this court where termination of a defendant's period of probation (as part of a split sentence) was granted on a motion for early termination of probation. *See United States v. Entrekin*, No. 21-cr-686 (RDM) (granting § 3564(c) termination of probation in split sentence case pursuant to the decision in *Little*); *United States v. Ianni*, 21-cr-451 (CJN) (terminating the period of probation in a case involving a split sentence). The Government counters that "neither case establishes that early termination is the proper way of challenging the legality of a sentence or that such relief is warranted here." Govt. Opp'n, ECF No. 87, at 18, n.8 (distinguishing these cases).

This Court need not opine now whether 18 U.S.C. Section 3564(c) may be used to attack the legality of Mr. Vogel's sentence because, even assuming *arguendo* that it is, the Court finds that Mr. Vogel has not established his entitlement under the standard set forth in that statute. As discussed below, even if the interest of justice warrants early termination, early termination is neither warranted by the Defendant's conduct nor consistent with the Section 3553(a) factors.

### A. Defendant's Conduct

Ms. Vogel has not established that his conduct warrants early termination [or in this case, elimination] of his period of probation merely because he has served his period of incarceration and is "undertaking the process of moving past this event in his life." Def.'s Mot., ECF No. 86, at 8. Def.'s Mot., ECF No. 42, at 1. Defendant indicates that since his incarceration ended in late August 2023, he "has been living in society without any conditions or restrictions, believing that after *Little*, he would be permitted to move past this unfortunate period in his life." Def.'s Reply, ECF No. 88, at 10. He is gainfully employed "in the construction industry, including doing heating and plumbing" and his "family relies on him financially[.]" *Id.* Defendant notes that "[s]imilar factors, including compliance with pretrial release and stable employment," were considered in

support of relief under Section 3564(c) in *United States v. Entrekin*, No. 21-cr-686 (RDM), 2023 WL 8827069, at *1 (D.D.C. Dec. 21, 2023). In that case, the Honorable Randolph Moss noted that Entrekin "served his term of incarceration without incident" and "served approximately 16 months of his 36-month term of probation;" and furthermore, defendant had "found stable employment and housing, [ ] completed 6 months of mental health treatment . . . , fulfilled his 60 hours of community service, submitted negative drug tests and paid all his financial obligations arising from his conviction." *Id.* Defendant relies also on *United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020) for the proposition that "a district court need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. §3583(e)(1) [regarding early termination of supervised release]." Def.'s Reply, ECF No. 88, at 9-10.[3]

The Government notes however that "mere compliance with the conditions of release does not warrant early termination" of probation. Govt. Opp'n, ECF No. 87, at 19; *see, e.g., United States v. Suarez*, 21-cr-205 (DLF), 11/9/23 Minute Entry ("As courts in this district have previously held, 'good behavior alone' is generally 'insufficient to warrant early termination' of probation.") (citing *United States v. Parker*, 219 F. Supp. 3d 183, 191 (D.D.C. 2016)); *United States v. Ferrell*, 234 F. Supp. 3d 61, 64 (D.D.C. 2017) (finding early termination not warranted by conduct of the defendant despite good behavior and compliance with the terms of probation);

---

[3] Defendant cites *United States v. Scanlon*, No. 14-cr-007 (RC), 2024 WL 1716645, at *3 (D.D.C. Apr. 22, 2024) in further support of this proposition, but that citation is somewhat misleading. In *Scanlon*, the Honorable Rudolph Contreras did note that a defendant need not show extraordinary or unusual conduct, but Judge Contreras noted also that mere compliance with the conditions of release is not enough to warrant early termination. "If perfect compliance alone were enough to terminate supervised release, 'the exception would swallow the rule.'" *Scanlon*, 2024 WL 1716654, at *3 (quoting *United States v. Etheridge*, 999 F. Supp. 2d 192, 196 (D.D.C. 2013)).

*see also United States v. Payne*, No. 1:17-cr-142, 2020 WL 2813438, at *1 (E.D. Tex. May 29, 2020) ("Courts have routinely found that 'mere compliance with the conditions of probation' does not warrant early termination of a probation term, as such behavior is required by law.") (quoting *United States v. Salazar*, 693 F. App'x 565, 566 (9th Cir. 2017)).

In the instant case, this Court finds that while Defendant's compliance with release conditions and reintegration into society is commendable, such conduct alone does not weigh in favor of termination of probation. As noted herein, a defendant's "compliance with his probation conditions is commendable, but it is also expected." *United States v. Gionet*, No. 22-cr-132, ECF No. 88 at 2 (D.D.C. Feb. 9, 2024) (denying motion to terminate probationary term of unlawful split sentence); *see also United States v. Hemphill*, No. 21-cr-555, 2024 WL 578977, at *3 (D.D.C. Feb. 13, 2024) (denying motion to terminate probationary term of unlawful split sentence, noting that early termination is "typically granted only upon a showing of new or changed circumstances not contemplated during sentencing, such as exceptionally good behavior") (internal quotation marks and citation omitted).[4]   Accordingly, the Court finds that, in this case, Defendant's compliance with release conditions and post-incarceration conduct does not sufficiently warrant early termination of Defendant's probation.

### B. Section 3553(a) Factors

As a preliminary matter, this Court notes that the Section 3553(a) factors applicable to this Court's analysis are: (1) the need to avoid unwarranted sentencing disparities; (2) the nature and circumstances of the offense and Defendant's history and characteristics; (3) deterrence of criminal

---

[4]The Government notes that, while the statutory language "does not explicitly foreclose the possibility of terminating a defendant's probationary term before he begins serving it," the phrase "conduct of the defendant" presumably references conduct while on probation.  Govt. Opp'n, ECF No. 87, at 19.

conduct; and (4) protection of the public from further crimes.[5]  Defendant proffers that the need to avoid sentencing disparities factor weighs in his favor insofar as "[m]aintaining Mr. Vogel's current sentence of probation will [ ] perpetuate an unwarranted sentencing disparity between Mr. Vogel and others convicted of a single petty offense" because after *Little*, no other individual sentenced for a single petty offense "will serve a sentence of both imprisonment and probation. Def.'s Mot., ECF No. 86, at 7.  Defendant's statement fails to recognize however that other January 6 defendants who have been <u>resentenced</u> after *Little* have served sentences of imprisonment and probation, albeit with credit given for one or the other.[6]

Defendant argues also that the factors involving the nature and circumstances of the offense, as well as his history and characteristics, weigh in his favor.  Defendant acknowledges that January 6 was "a horrific day in our nation's history," but proffers that his own "actions fall on the low end of that spectrum" as he "did not engage in assaultive behavior or destroy any property," and he notes that he accepted responsibility and had no criminal record.  Def.'s Mot., ECF No. 86, at 7. Furthermore, as indicated previously, Mr. Vogel is employed, and he has family

---

[5] Neither party indicates whether Defendant's restitution obligation has been fulfilled.

[6] For example, in *Little,* the Honorable Royce Lamberth resentenced the defendant to 150 days of incarceration, giving credit for the 60 days of incarceration previously served and giving an additional 30 days of credit against the new sentence for the 18 months of probation the defendant had already served.  Accordingly, defendant had to serve an additional 60 days of incarceration after resentencing.  In *Mazzio*, upon resentencing after remand, where the defendant had already served his incarceration and 14 months of probation, Judge Lamberth credited him for the 14 months served and with 20 months for defendant's 60 days in prison. *United States v. Mazzio*, No. 22-cr-214-RCL, Minute Entry for Resentencing (D.D.C. Jan. 31, 2024).  After accounting for these 34 months of credit, the Defendant was to serve an additional 12 months of probation.  In *United States v. Hendrix*, No. 21-cr-426, upon the D.C. Circuit's remand of the case for resentencing, this Court sentenced defendant to 42 months of probation with credit of 18 months for time served.  Equivalent credit of 14 months was given for the 14 months of probation defendant served, while his 30 days of incarceration was credited as 4 months of probation.

support.  Def's Mot., ECF No. 86, at 7.

In contrast, the Government focuses on the serious nature and circumstances of the offense, whereby Defendant traveled from New York to Washington, D.C. to participate in the events on January 6, 2021.  Govt. Opp'n, ECF No. 87, at 3.  Defendant "joined a large mob of rioters, who overwhelmed police officers and breached the Capitol building."  *Id.* at 2.  He watched as other rioters damaged police barriers and tore up scaffolding, and despite hearing flash-bang grenades nearby, he entered the Capitol building and remained inside for nearly 20 minutes, ignoring directions by the Capitol Police to leave.  *Id.* After being escorted outside, he remained on the grounds for nearly two hours, and throughout his time at the Capitol, he recorded and broadcasted footage of the insurrection on social media.  *Id.*

The Government explains that this Court opined that Defendant's conduct on January 6 was "decidedly . . . on average worse than some other defendant with this charge[.]"  Govt. Opp'n, ECF No. 87, at 20 (quoting Transcript of Sentencing, ECF No. 80, at 68).  At sentencing, this Court noted that, in contrast to other defendants charged with the same offense, Mr. Vogel "continued to stay when . . . directed by law enforcement to get out," "ignored a flash-bang grenade going off nearby, clearly intended by law enforcement to [ ] deter rioters from moving forward and going into the Capitol," "entered under the scaffolding's torn tarp revealing the inner stairways," "entered after witnessing rioters scaling the scaffolding," "celebrated their conduct afterwards," and "accepted responsibility [only] shortly before trial."  *Id.* (quoting ECF No. 80, at 67-68).  Mr. Vogel referred to the riot as "epic" and "the greatest rock concert [he'd] ever been to."  ECF No. 80, at 15, 58-59.  Even while Mr. Vogel was credited with accepting responsibility, the Court explained that "[t]here [was] no apology to the country or its citizens for what you got involved in or importantly, a full appreciation, frankly of the gravity of your actions and its effect

on our democracy." ECF No. 80, at 64. This Court's observations during sentencing make it clear that the nature and circumstances of Defendant's offense were beyond "relatively minor," as they were characterized by Defendant. *See* Def.'s Reply, ECF No. 88, at 11 (noting that his "conduct on January 6 was relatively minor").

Regarding deterrence of criminal conduct and protection of the public, Defendant indicates that he was in full compliance while on pretrial release for over two years. *Id.* at 7. He argues that his sentence of incarceration "reflects the seriousness of the offense and promotes respect for the law," as it is more serious punishment than that received by many of the January 6 defendants who avoided jail time. *Id.* at 7-8 & n.1. The Government asserts, and this Court agrees that the sentence imposed was "designed to reflect the severe nature and circumstances of the defendant's actions (including as compared to other defendants facing the same charges) as well as the clear need for specific deterrence in this case." Govt. Opp'n, ECF No. 87, at 20. Moreover, the general need for deterrence of behavior of the type that occurred on January 6, 2021, and particularly, the need to encourage respect for rule of law continue to date, with the 2024 election looming.

Accordingly, upon consideration of the relevant Section 3553(a) factors, this Court finds that such factors counsel against early termination of probation for Mr. Vogel.

### C. Interest of Justice

Defendant argues that the interest of justice "weighs heavily in favor of terminating Mr. Vogel's probation immediately" because he has served the portion of his sentence requiring incarceration; split sentences have been held to be illegal; and this Court indicated that probation would be terminated if split sentences were deemed illegal. Def.'s Mot., ECF No. 86, at 5. Defendant asserts that he dismissed his appeal and moved this Court to terminate the period of probation "[w]ith this Court's assurance that it would terminate Mr. Vogel's unlawful period of

probation." Def.'s Reply, ECF No. 88, at 3. The Court notes that when it indicated that the sentence of probation would be dismissed if split sentences were found illegal, the Court did not have the benefit of the D.C. Circuit's decision in *Little* – where a remand for resentencing was the defendant's recourse – or cases that have interpreted *Little*.

In contrast, Mr. Vogel was aware of the *Little* decision when he opted to dismiss his appeal and elected instead to request an early termination of probation. The Government contends that by doing so, Mr. Vogel "seeks to avoid the appropriate remedy for his illegal split sentence" instead "dress[ing] up his challenge to the legality of his split sentence as a motion for early termination of probation," and this is the "wrong procedural vehicle." Govt. Opp'n, ECF No. 87, at 12.[7] This Court has indicated that this question of the correct "procedural vehicle" is not resolved herein because Defendant does not meet the standard for early termination.

Regarding the interest of justice inquiry, the Court agrees that Defendant has a valid argument that the interest of justice may be served by eliminating a split sentence that is now deemed illegal. But the Court agrees also with the Government that the sentence imposed was crafted to "address the specific circumstances of [this] defendant's offense" and to satisfy "its statutory responsibility to 'impose a sentence sufficient, but not greater than necessary, to comply with the purpose of [the sentencing statute].'" Govt. Opp'n, ECF No. 87, at 17 (quoting 18 U.S.C. §3553(a)). This "interest of justice" inquiry "give[s] the district court latitude to consider a broad range of factors in addition to an individual's behavior in considering whether to terminate the

---

[7] The Government notes that because Mr. Vogel has dismissed his appeal, "a challenge pursuant to 28 U.S.C. §2255" would be a proper mechanism to challenge his sentence, and in the "interest[] of justice, the government would consider waiving any applicable procedural barriers to the relief sought in a §2255 motion based on the D.C. Circuit's decision in *Little*, such as appellate or collateral review waivers, procedural defaults, or statutes of limitations." Govt. Opp'n, ECF No. 87, at 12-13 & n.4.

[supervision] period." *United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999).  As such, "[t]he interest of justice might arguably disfavor early termination" in this split sentence case "because that would result in the defendant ultimately receiving an amount of punishment less that what the Court initially found appropriate under the §3553(a) factors." *United States v. Hemphill*, 2024 WL 578977, at *4; *accord United States v. Rader*, Case No. 1:22-cr-57-RCL, 2024 WL 474535, at *4 (D.D.C. Feb. 7, 2024) ("Had the Court foreseen the D.C. Circuit's decision in *Little* at the time it sentenced Rader, it would not have imposed a sentence of the same format, but it might have imposed a sentence of equivalent or greater punishment.")

In the instant case, this Court need not determine the weight of the interest of justice factor, as the text of §3564(c) makes it clear that early termination of probation must be warranted by both the interest of justice and the conduct of the defendant, and it must be informed by §3553(a) factors.  Accordingly, even if the interest of justice weighs in favor of early termination of probation, that factor alone does not suffice to grant Defendant's motion where the Court has found that the conduct of the Defendant and the §3553(a) factors weigh in favor of denying early termination of probation.  Accordingly, it is this 17th of June 2024,

ORDERED that Defendant's [86] Motion for Early Termination of Probation be and hereby is DENIED.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE